UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS    **JUDGE KENNELLY**
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **MAGISTRATE JUDGE SCHENKIER** |
| ) | |
| v. ) | No. 07 CR 862 |
| ) | |
| GABRIEL DRAGOS TOADER, ) | Violations: Title 18, United States |
| also known as "Gabi Camatar" ) | Code, Sections 1343, 1956(h), |
| BELA BALINT, ) | and 2. |
| also known as "Bebe," ) | |
| CRISTINA SAVU, and ) | |
| IGORI GOREACIUC ) | |

**FILED**
APR 1 7 2008 T.C
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### COUNTS ONE THROUGH TWELVE

The SPECIAL JUNE 2007 GRAND JURY charges:

1. At times relevant to this indictment:

    a. Internet auctions sites, such as eBay, and other internet-based sales forums, provided the opportunity to buy and sell items over the internet. Sellers would transmit information by computer to the site describing the property for sale and inviting bids on the property. Potential purchasers would transmit offers by computer to purchase the items for sale.

    b. In the case of eBay, the highest bidder for a particular item was declared the winner of the auction and afforded the opportunity to purchase the item for the price of the winning bid. In those instances in which the winning bidder failed to complete his or her purchase of an item, the seller could elect to transmit to previous bidders through eBay a "second chance offer" to purchase the item for the price of their prior bid.

    c. Western Union engaged in the business of transferring money

by wire throughout the United States and foreign countries and assigned a unique money transfer control number, also known as an "MTCN," to each request by a customer to transmit funds. Western Union agents were generally co-located with other businesses, such as convenience stores and currency exchanges.

      d.    Western Union generally required a sender of funds to complete a form providing the amount of money to be sent and the name and location of the individual receiving the funds. After receiving the sender's funds and processing the form, Western Union provided the MTCN assigned to the transaction to the sender of the funds.

      e.    Western Union generally required a recipient of funds to complete a form providing the amount of money to be received, the name and location of the individual sending the funds. In addition, the recipient could provide the MTCN number assigned by Western Union to the transaction. Western Union agents typically required those receiving a high-dollar wire transfer to present a form of photographic identification, such as a driver's license or passport, when receiving the funds.

      f.    All Western Union wire transfers involved transmission of data in interstate commerce. When a sender of funds initiated a wire transfer, data relating to the transaction was transmitted from the originating Western Union agent to a computer server located in either Missouri or Texas, and was then transmitted to another Western Union computer server located in North Carolina. When the recipient of a wire transfer picked up the money from Western Union,

data relating to the transaction was transmitted between the receiving Western Union agent and the respective Western Union computer server in Missouri or Texas.

2. Between approximately November 2004 and November 2006, in the Northern District of Illinois, and elsewhere,

> GABRIEL DRAGOS TOADER,
> BELA BALINT,
> CRISTINA SAVU, and
> IGORI GOREACIUC,

defendants herein, along with Mihai Bledea, Cristian Bentan, Igor Aslan, Gabriel Constantin, Adrian Ghighina, and others known and unknown to the Grand Jury, knowingly devised and participated in a scheme to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

3. It was part of the scheme that individuals located outside of the United States, principally in Romania (the "Foreign Co-schemers"), fraudulently posed as legitimate sellers of goods from sites such as eBay on the internet. By posing as sellers of goods on the internet, the Foreign Co-schemers caused approximately 600 victims in the United States and abroad to wire transfer funds via Western Union to the defendants and other co-schemers in amounts totaling approximately $1,500,000 for items that were never delivered to the victims.

4. It was further part of the scheme that the Foreign Co-schemers posed as legitimate sellers on-line through various fraudulent means, such as: (i) unauthorized use ("hijacking") of legitimate internet auction accounts, (ii) creating

internet solicitations designed to appear as if they had originated from legitimate internet sites such as eBay, (iii) transmitting false "second chance offers" to users of eBay, (iv) falsely representing themselves as sellers who were located in the United States, (v) falsely representing that internet transactions were "insured" by internet sites such as eBay and Square Trade, (vi) falsely representing that funds transmitted by the buyers would be held in "escrow" or "purchase protection accounts" to guard against fraud, and (vii) falsely promising to sell items over the internet that the Foreign Co-schemers would not deliver.

5. It was further part of the scheme that defendants knowingly agreed to receive fraud proceeds generated by the Foreign Co-schemers from Western Union agents at various locations throughout the United States, principally in and around Chicago, Illinois; Miami, Florida; Dallas, Texas; and Los Angeles, California. Defendants and their co-schemers did so in exchange for a percentage of the fraud proceeds, generally 20% to 40%, generated by the Foreign Co-schemers.

6. It was further part of the scheme that in order to receive and transmit fraud proceeds generated by the Foreign Co-schemers, defendants GABRIEL DRAGOS TOADER, BELA BALINT, CRISTINA SAVU, IGORI GOREACIUC, co-schemers such as Mihai Bledea, Cristian Bentan, Igor Aslan, Gabriel Constantin, Adrian Ghighina, and others known and unknown to the Grand Jury, established aliases by obtaining false identification documents, such as driver's licenses, state identification cards, and social security cards, in names that did not reflect their true identities. The alias names and false identification documents employed by

defendants and their co-schemers included the following:

| True name | False identification documents |
|---|---|
| BELA BALINT | Dan Ackerman, George Brown, George Blumann, George Goodwin, Thomas Irwin, Paul Schultzer, Tony Sharp, Kevin Walker, Toni Walker |
| CRISTINA SAVU | Michele Keolman, Gretta Kollman, Maya Morritz, Dana Schawrzmann, Dana Shotzwann, Klaudia Vanboritz, Eryka Wandez |
| IGORI GOREACIUC | Victor Armand, Alexander Bernois, Andre Corynt, Robert Devi, Robert Dore, Victor Lorent, Ciuculescu Marian, George Popesco, Alexander Vernois |
| Adrian Ghighina | Andre Beauville, Dan Anderson, Daniel Derolent, Dariel Dugurant, Dan Flinchum, Cosmin Pavel, Andre Motoc, Dan Schaffman, Dan Schaufman, Dan Schneider, Maurice Schulzer, Klauss Schwebel, Kraus Schwubel, Klaus Schwubrer, Maurice Schuman, Dan Smith, |
| Mihai Bledea | Daniel Allerman, Robert Brannik, Alex Clapton, James Devaro, David Goldman, Daniel Hassel, James Hastings, Andrew Hofferman, Michael Hornet, Scott Jenken, Michael Krups, Vladimir Mysik, David Sherman, David Shuman, Dan Sulivan, Anthony Verlofsky |
| Cristian Bentan | Alberto Bagio, Alberto Biagiolli, Paul Bigotti, Adam Binder, Giuliano Biggato, Paul Bigotti, Roberto Fiorenza, Carlo Gallo, Paulo Novalli, Luciano Pirogi, Tony Pirolli, Michael Robenstein, John Raynolds, Paul Silaghi, Nick Thomas, Alex Wagner |

| True name | False identification documents |
|---|---|
| Igor Aslan | Peter Bergen, Michael Faragot, Antonio Fargas, Omar Ladislau, John Richard, William Rogers, Tam Silverado, Karl Wagner, Edmund Wolf |

7. It was further part of the scheme that defendant GABRIEL DRAGOS TOADER and others caused the aliases to be communicated to the Foreign Co-schemers in order to enable the Foreign Co-schemers to incorporate the alias names into the fraudulent internet solicitations. Defendants and the Foreign Co-schemers did so in order to identify the names of the individuals to whom the victims should transmit their funds.

8. It was further part of the scheme that the Foreign Co-schemers caused the victims to wire transfer funds via Western Union to the defendants and caused the victims to provide the Foreign Co-schemers with the information necessary to obtain the victims' funds from Western Union, generally the name of the sender of the funds, the amount of funds transferred, the originating city, and the MTCN assigned by Western Union to the transaction.

9. It was further part of the scheme that the Foreign Co-schemers, after concluding fraudulent internet sales transactions and receiving the transactional data relating to Western Union wire transfers from the victims, caused the transactional data to be communicated to the United States, generally by text message, in order to enable the defendants and other co-schemers to receive the victims' funds from Western Union agents. The Foreign Co-schemers generally

transmitted the transactional information to defendant GABRIEL DRAGOS TOADER or others whom TOADER identified to the Foreign Co-schemers.

10. It was further part of the scheme that after the Foreign Co-schemers had transmitted the Western Union transactional data to the United States, defendant TOADER directed co-defendants and co-schemers such as BELA BALINT, CRISTINA SAVU, IGORI GOREACIUC, Adrian Ghighina, and others to receive the fraud proceeds from Western Union agents using alias identification documents.

11. It was further part of the scheme that defendants falsely represented their identities to Western Union agents when receiving proceeds from the fraudulent internet sales transactions, using alias names, false social security numbers, false telephone numbers, false addresses, and false and counterfeit identification documents purportedly issued by states such as Arizona, California, Indiana, Iowa, Michigan, New York, Ohio, Texas, Virginia, and Wisconsin.

12. It was further part of the scheme that defendants agreed to cause a portion of the fraud proceeds, generally around 60%, to be transmitted outside of the United States to the Foreign Co-schemers, generally via Western Union, MoneyGram or bank wire transfers. Defendant GABRIEL DRAGOS TOADER collected the Foreign Co-schemers' share of the fraud proceeds from others, such as defendants BELA BALINT, CRISTINA SAVU, and IGORI GOREACIUC, or caused them to transmit the funds to the Foreign Co-schemers and others at his direction.

13. It was further part of the scheme that, in order to conceal and retain

his share of funds derived from the scheme to defraud, defendant GABRIEL DRAGOS TOADER transmitted, and caused others to transmit, fraud proceeds to TOADER's family members and financial accounts in Romania via Western Union, MoneyGram, and bank wire transactions.

14. It was further part of the scheme that defendants shared information on currency exchanges and frequented the same currency exchanges when receiving fraud proceeds via Western Union.

15. It was further part of the scheme that defendants misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

16. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, for the purpose of executing the scheme to defraud, the defendants set forth below knowingly caused to be transmitted to or from Illinois, by means of wire communication in interstate commerce, certain signs, signals, and sounds, namely, a Western Union wire transfer of funds in the amounts set forth below, each such transaction constituting a separate count of this indictment for the defendant named in each count:

| Ct. | Defendant | Date | Amount | Transfer sent between Illinois and |
|---|---|---|---|---|
| 1 | GABRIEL DRAGOS TOADER | 01/02/06 | $ 3,701.50 | "Alexander Weinstein" (California) |
| 2 | BELA BALINT, aka "Dan Ackerman" | 07/18/05 | $ 2,500.00 | Victim BH (Tennessee) |
| 3 | BELA BALINT, aka "George Brown" | 09/27/05 | $ 1,300.00 | Victim LS (California) |
| 4 | BELA BALINT, aka "George Goodman" | 11/07/05 | $ 850.00 | Victim TW (California) |
| 5 | BELA BALINT, aka "Tony Sharp" | 02/25/06 | $ 2,990.00 | Victim ES (Florida) |
| 6 | CRISTINA SAVU, aka "Dana Schawrzmann" | 04/19/06 | $ 2,995.00 | Victim RH (Utah) |
| 7 | CRISTINA SAVU, aka "Dana Shotzwann" | 07/19/06 | $ 2,700.00 | Victim HD (Louisiana) |
| 8 | CRISTINA SAVU, aka "Gretta Kollman" | 10/25/06 | $ 2,900.00 | Victim RV (Nevada) |
| 9 | CRISTINA SAVU, aka "Michele Keolman" | 11/02/06 | $ 2,900.00 | Victim MP (Tennessee) |
| 10 | IGORI GOREACIUC, aka "Alexander Bernois" | 08/29/06 | $ 2,700.00 | Victim JK (Kansas) |
| 11 | IGORI GOREACIUC, aka "Alexander Vernois" | 08/29/06 | $ 4,145.00 | Victim JS (New York) |
| 12 | IGORI GOREACIUC, aka "Robert Devi" | 03/06/07 | $ 2,650.00 | Victim RM (Florida) |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THIRTEEN

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this indictment.

2. On or about February 21, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

GABRIEL DRAGOS TOADER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by wire communication from Illinois to Romania, certain writings, signs, signals, and sounds, namely a wire transfer of funds from account number xxxxx3744 at J.P. Morgan Chase Bank in the amount of approximately $9,000, to an account at Alpha Bank Ltd., Cyprus;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FOURTEEN

The SPECIAL JUNE 2007 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this indictment.

2.    On or about October 2, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

GABRIEL DRAGOS TOADER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by wire communication from Illinois to Romania, certain writings, signs, signals, and sounds, namely a MoneyGram wire transfer of funds in the amount of approximately $5,000, to Individual LT in Romania;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FIFTEEN

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraph 1 of Count One of this indictment.

2. Beginning in or about October 2005, and continuing until on or about November 2006, at Chicago, in the Northern District of Illinois, and elsewhere,

### GABRIEL DRAGOS TOADER,

defendant herein, along with Bela Balint, Cristina Savu, Adrian Ghighina, Cristian Bentan, and others known and unknown to the Grand Jury, conspired to transmit and transfer funds from a place in the United States to a place outside the United States knowing that the funds involved in the transmission and transfer represented the proceeds of some form of unlawful activity, namely, violations of Title 18, United States Code, Section 1343 (wire fraud), knowing that the transmission and transfer was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

3. It was part of the conspiracy that defendant GABRIEL DRAGOS TOADER and his co-conspirators agreed to transmit and cause to be transmitted to various individuals in Romania, and to bank accounts in Romania and Cyprus, funds derived from a scheme to defraud users of internet auction sites such as eBay (the "Fraud Proceeds").

4. It was further part of the conspiracy that defendant GABRIEL DRAGOS TOADER caused other co-conspirators to receive the Fraud Proceeds from Western Union agents in alias names and to convert the Fraud Proceeds to cash.

5. It was further part of the conspiracy that the Foreign Co-conspirators communicated to defendant GABRIEL DRAGOS TOADER the identities of individuals in Romania and bank accounts in Cyprus and Romania to which the Foreign Co-conspirators' share of the Fraud Proceeds should be directed. Defendant TOADER then transmitted and caused other co-conspirators to transmit the Foreign Co-conspirators' share of the Fraud Proceeds to the individuals and bank accounts identified by the Foreign Co-conspirators.

6. It was further part of the conspiracy that defendant GABRIEL DRAGOS TOADER deposited cash Fraud Proceeds that he received from his co-conspirators into bank accounts that he maintained at various financial institutions. Such bank accounts were used principally to transmit Fraud Proceeds to bank accounts in Romania and Cyprus.

7. It was further part of the conspiracy that defendant GABRIEL DRAGOS TOADER established bank accounts in the names of fictitious corporations, such as TDG Consulting LLC. Defendant TOADER used such accounts to deposit Fraud Proceeds that had been converted to cash, and to transmit Fraud Proceeds to the Foreign Co-conspirators.

8. It was further part of the conspiracy that defendant GABRIEL DRAGOS TOADER, and other co-conspirators at his direction, transmitted Fraud

Proceeds via MoneyGram to common Foreign Co-conspirators in Romania, for example:

    a.    Between approximately October 2005 and April 2006, defendant GABRIEL DRAGOS TOADER, Mihai Bledea, Cristian Bentan, and Individual ER transmitted Fraud Proceeds to Individual 1 in Romania.

    b.    Between approximately March 2006 and April 2006, defendant GABRIEL DRAGOS TOADER, Adrian Ghighina, Individual JB, and Individual AOA transmitted Fraud Proceeds to Individual 2 in Romania.

9.    It was further part of the conspiracy that defendant GABRIEL DRAGOS TOADER and other co-conspirators at his direction, transmitted Fraud Proceeds to common banks in Cyprus, for example:

    a.    Between approximately November 2005 and August 2006, defendant GABRIEL DRAGOS TOADER and Cristina Savu transmitted Fraud Proceeds to the Alpha Bank in Nicosia, Cyprus.

10.    It was further part of the conspiracy that defendants misrepresented, concealed, hid, and caused to be misrepresented, concealed and hidden, the purposes of acts done in furtherance of the conspiracy;

In violation of Title 18, United States Code, Sections 1956(h) and 2.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The allegations contained in Counts One through Fourteen of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1343, as alleged in the foregoing Indictment,

> GABRIEL DRAGOS TOADER,
> BELA BALINT,
> CRISTINA SAVU, and
> IGORI GOREACIUC,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense(s).

3. The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to funds in the amount of approximately $1,500,000.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

    (a) Cannot be located upon the exercise of due diligence;

    (b) Has been transferred or sold to, or deposited with, a third party;

    (c)    Has been placed beyond the jurisdiction of the Court;

    (d)    Has been substantially diminished in value; or

    (e)    Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

                                              A TRUE BILL:

                                              _____

                                              FOREPERSON

_____
UNITED STATES ATTORNEY